UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAYMOND AND MARCIA WILLIAMS             CIVIL ACTION

VERSUS                                   NO:08-4467

CITY OF NEW ORLEANS ET AL                SECTION: "J" (2)


**ORDER AND REASONS**

Before the Court are Defendants', the City of New Orleans, Mayor Ray C. Nagin, and Dr. Ed Blakey **Motion for Summary Judgment** (Rec. D. 36) and Defendant Durr Construction' s **Motion for Summary Judgment** (Rec. D. 33). Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Defendants' **Motions for Summary Judgment** are **GRANTED.**

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

Plaintiffs, Raymond and Marcia Williams filed this suit against the City of New Orleans (hereafter "the City"), Mayor Ray C. Nagin, Dr. Ed Blakey, and Durr Construction LLC alleging wrongful demolition of their property located at 10050 Morrison Blvd and 10060 Morrison Blvd on September 24, 2008. Plaintiffs are the owners of two commercial properties located at 10050 Morrison Road (hereafter "10050") and 10060 Morrison Road (hereafter "10060") in eastern New Orleans. Prior to Hurricane

Katrina both were fully occupied according to Plaintiff. Both properties were damaged in Hurricanes Katrina and Rita. Plaintiffs obtained building permits for both structures on May 12, 2006 which they allege were in plain view at both sites. Plaintiffs also purport that they did everything necessary to secure the building in the interim including boarding up windows.

On July 23, 2007, 10050 was set on fire by an arsonist.[1] Plaintiffs argue that 10060 was not damaged by this fire though it does share a brick wall with 10050.

On April 7, 2008, the City alleges to have discovered that the property at 10060 had suffered severe fire damage. On April 24, 2008, the City alleges that it discovered that the property at 10050 had sustained severe damage from a fire. On May 7, 2008 the City issues an "Imminent Danger Notice to Proceed" to contractor Metro Durr Group on the 10050 property. On May 15, the City issued a permit for the demolition of the structure at 10050. On May 23, 2008 the city issues an "Imminent Danger Notice to Proceed" to contractor Metro Durr Group on the 10060 property. On June 2, the City issued a permit for the demolition of the structure at 10060. In June 18, 2008, the city issued a final demolition inspection report for 10050. On July 16, 2008, the

---

[1]Plaintiffs aver that the culpable party was never apprehended.

city issued a final demolition inspection report for 10060.[2] Plaintiffs aver that these demolitions took place at least ten months after the alleged nuisance was reported.

## DISCUSSION

The City alleges that it is well within its authority to demolish properties which are in imminent danger of collapse pursuant to Sections 26-165 and 166 of the Code of New Orleans. The City contends that in a "post-Katrina landscape, the city has attempted to address conditions posing an immediate risk of harm to the public safety." Def. Mtn. For Summary Judgment, p. 5. Sections 165 defines when an immovable can be declared a public nuisance including structures which are "dilapidated, decayed, unsafe, or unsanitary," "a fire hazard,"and various other reasons including "depreciating the value" of surrounding property. M.C.S., Ord. No. 21228, § 2, 9-4-03. Section 166 give the code official and the Department of Safety and Permits the power to determine whether a property is a nuisance for the purposes of Section 165 and to demolish the structure without prior notice to the owner of the property. M.C.S., Ord. No. 21228 § 2, 9-4-03.

The city maintains that Plaintiffs were not entitled to notice of demolition since their structures were in imminent

---

[2] In its brief the city had a typo regarding the date the city issued the final demolition inspection report for 10060 where they indicate instead the a second report was issued for 10050.

danger of collapse. This, argues the City, has been affirmed by the United States Supreme Court on several occasions. See e.g. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 677-80 (1974).

The City further argues that the City and its employees are entitled to immunity pursuant to La. R. S. 9:2798.1 (b) which provides that liability shall not be imposed on public entities or its employees for actions taken within their discretionary or policymaking duties. Since section 166 provides that the employees "shall" demolish public nuisances, the City argues that the demolition was within its discretionary duties. The case for immunity is made stronger by the fact that the statute requires employees to make a judgment call about the state of the structure argues the City. See Fossier v. Jefferson Parish, 985 So. 2d 255, 258-9 (La. App. 5th Cir. 4/15/08)

The City argues that Plaintiffs' claims under the takings clause of the constitution must fail. U.S. Const. amend. V. The City admits that pursuant to Section 26-166 and 26- 168 of the City Code ordinances, it demolished 10050 and 10060. The City argues that this was a lawful exercise of its power to protect the health and safety of its citizens. Vulcan Materials Co. V. City of Techuacana, 369 F. 3d 882 (5th Cir. 2004); State v. Jackson, 94 So. 2d 150, 152 ((La. 1922)..

Furthermore, the City avers that since Plaintiffs have not

brought an action in State Court for *just compensation*, their claims under the takings clause is not yet ripe. U.S. Const. amend. V.; John Corp. v. City of Houston, 214 F.3d 573, 581 (5th Cir. 2000)

The City further argues that the claims against Mayor Ray Nagin and Dr. Ed Blakey are in their official capacities and not their individual capacities since they were not directly involved in the facts underlying the litigation. Since, according to Defendants, they are being sued in their official capacity, the suits against Ed Blakey and Ray Nagin are duplicative and should be dismissed. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (holding that official capacity suits are another way of pleading an action against an entity).

In response, Plaintiffs make several arguments. First, Plaintiffs aver that they were not informed of the plan to demolish their property. They further argue that the City failed to provide them with the constitutionally required opportunity to be heard because their buildings were not in imminent danger of creating a hazard. Finally, Plaintiffs argue that the City demolished the wrong building and really intended only to tear down the property at 10050 Morrison when they tore down 10060 since it was never in danger of collapse.

Plaintiffs argue that their building was not in imminent danger of collapse and therefore the City was wrong to proceed

under Section 26-166 of the municipal code. Plaintiffs argue that Section 26-167 should have been applied to their property rather than 26-165 and 26-166 since 26-167 applies when there is no imminent danger of collapse. Section 26-167 requires that the code official contact the owner of the property who then has several available options after the notice of demolition has been issued.

Furthermore, Plaintiffs argue that they are entitled to a notice of demolition ten days in advance where utilities are being discontinued to their property pursuant to Section 26-168. Since the City had to shut off their power and they were not notified, Plaintiffs argue that the City violated its own ordinance Section 26-168 of the municipal code.

Plaintiffs also argue that the City failed to declare 10060 a nuisance in advance of the demolition as required by Section 26-166 and 26-267 both because it was not a nuisance and because the City did not follow proper procedures. Therefore, argue Plaintiffs, the City was obligated to notify them in advance of the demolition and as such violated its own ordinances.

As evidence of this, Plaintiffs point to the photographs attached as Exhibit E to Defendant's Motion for Summary Judgment. According to Plaintiffs, these photographs show that 10050 was damaged but that 10060 was not. Thus, argue Plaintiffs, Defendant is mistaken when it declares that 10060 was 75% fire damaged when

in fact it was 10050.

Plaintiffs further argue that the demolition permit for 10060 identifies it as a vacant lot on June 2, 2008. This, argue Plaintiffs, is further evidence that the City was confused since at the time 10050 was a vacant lot and 10060 had a two story building on the property. Plaintiffs further argues that Durr, the demolition contractor, had an obligation to check the information provided on the permit before proceeding with demolition which cannot be undone.

Plaintiffs also supply the affidavit of Mr. Schoolmeyer, a licensed professional engineer who reviewed the photographs and other evidence in the record of this case and found that 10060 was not in danger of imminent collapse.

Plaintiffs also argue that their contact information was readily available to the City because of the building permits attached to both structures.

Furthermore, Plaintiffs argue that there can be no imminent danger finding in this case in light of the delay in demolition. The City waited for almost 3 years after Hurricane Katrina and almost a year after the fire at 10050. Therefore, argue Plaintiffs, it was clear there was no immediate danger. Plaintiffs aver that the City proceeded recklessly rather than taking the necessary time to ensure that they were not proceeding with an incorrect demolition.

Given this set of facts, Plaintiffs argue that they were constitutionally entitled to at least some procedural safeguards against the deprivation of their property. U.S. Const. amend. V.

Defendant Durr Constructions (hereafter "Durr") submits a separate Motion for Summary Judgement. (Rec. D. 33). Durr argues that it should be granted summary judgment since the claims in this case relate to § 1983 which requires that the actions in question be under the color of state law. Durr argues that they were not since Durr was not involved in the determinations regarding whether or not to demolish the property. Durr also argues it had no obligation to Plaintiffs in this action, rather it was only responsible for completing its contract with the City.

Durr further argues that Plaintiffs cannot show that it was acting under the color of state law. Defendant identifies four tests for making this determination including (1) the "state compulsion test", (2) the "public function" test, (3) the "nexus" test, or (4) the "symbiotic relationship" test. Durr avers that Plaintiffs cannot show that Durr was acting under the color of state law under any of these tests.

Durr argues that it cannot be found to have acted under state law pursuant to the "state compulsion test" since it was not involved in any of the policy decisions that is required to find state action by a player. Blum v. Yarestsky, 457 U.S. 991,

1002 (1982). Smith v. City of Albany, 2007 WL 2973995 (2nd Cir. 2007.[3]

Similarly, Durr argues that it was not performing a public function and cannot be found to have been acting under the color of state law under the second test. Richard v. Hoescht Celanese Chemical Group, Inc., 355 F. 3d 345, 352 (5th Cir. 2003). This test requires, argues Durr, that it has been delegated some duty generally reserved for the state. Jackson v. Metropolitan Edison Co. 419 U.S. 345, 353 (1974). In the present case, Durr argues that the City was solely responsible for making the determination that the property needed to be demolished. All Durr did was supply materials and labor to complete the job.

Durr also argues that "nexus test" is not satisfied. It, argues Durr, was not involved in the decision making processes with the City as is required to find a nexus. Rendell-Baker v. Kohn, 457 U.S. 830 (1982).

Finally, Durr avers that the symbiotic relationship test is not applicable here since that test looks to see whether to City and Durr are physically and financially integrated which in this case they are not. Richard at 352. [4]

---

[3]In its brief, Durr acknowledges that Second Circuit cases do not have any binding effect on this Court but supply this case merely for its potentially persuasive effect due to the similar fact patterns of the two cases.

[4]Plaintiffs resubmit their opposition to the Motion for Summary Judgment from the other Defendants with slight changes not relevant for the purposes of this order.

With respect to the City, Ray Nagin and Ed Blakey, the Court finds that any claims arising from the takings clause are not ripe. The Fifth Circuit recognizes that property demolitions may constitute takings. See, e.g., John Corp. v. City of Houston, 214 F.3d 573, 579 (5th Cir. 2000) However, in order to show a violation of the Fifth Amendment's Takings Clause, Plaintiffs must first show that they have been denied just compensation through state procedures. See Id. at 581 (citing Williams County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 n.13 (1985))(holding that a § 1983 takings claims was not ripe until plaintiffs sought compensation through state procedures); Side by Side Redevelopment, Inc. v. City of New Orleans, 2009 U.S. Dist. LEXIS 53432 (E.D. La. 2009) (same)

Plaintiffs offer no evidence that they have sought just compensation for the demolitions of their properties through state procedures or that they were denied just compensation. Nor have they submitted any evidence that such attempts would be futile which might avoid Summary Judgment. See Liberty Mut. Ins. Co. v. La. Dep't. Of Ins., 62 F.3d 115, 117 (5th Cir. 2000). In the absence of such evidence, the Court cannot resolve Plaintiffs' claims relating to allegations of wrongful demolitions.

With respect to the Durr Defendant, Plaintiffs provide no legal basis for maintaining an action against Durr Construction as a state actor. In fulfilling, its contract Durr did not take on the decision or policymaking responsibilities of the City. Durr remained a private actor. If Durr was negligent in its demolition by failing to recognize alleged discrepancy between the permit and the demolished property, then a claim would need to proceed against them under another cause of action.

Furthermore, the City, if found to have violated Plaintiffs' rights would be held liable for the negligence of Durr. In the present case, the Court finds that the City "has provided such significant encouragement, either overt or covert, that the choice [made by Durr] must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1005 (U.S. 1982) (citation omitted)

Accordingly,

**IT IS ORDERED** that Defendants' **Motions for Summary Judgment (Rec. D. 33 & 36)** are **GRANTED**.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE